IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 93-1017
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    versus

JERRY CARL BULLARD,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(    January 25, 1994    )


Before JONES and DeMOSS, Circuit Judges, and SCHWARTZ[*], District
Judge.

PER CURIAM:

    Jerry Carl Bullard appeals his sentence following his plea of
guilty and conviction for knowing and willful misapplication of
bank funds, in violation of Title 18, U.S.C. § 656.[1]  Bullard

_____

    [*]  District Judge of the Eastern District of Louisiana,
sitting by designation.

    [1]Bullard's sentencing hearing was originally set for October
20th, 1992, but was reset several times thereafter.  On at least
one occasion the sentencing hearing was continued on defense
counsel's motion, for the express purpose of allowing defense
counsel additional time to obtain all necessary information
required to object to the monetary loss calculations set forth in
the Presentence Investigation Report (PSI).  Yet, up to and
including the time of the sentencing hearing on December 1, 1992,
no written objections to the PSI were submitted by or on behalf of

1

contends that the district court erred in calculating the amount of the loss caused by his offense conduct[2] and by applying the November 1, 1989 version of U.S.S.G. § 3E1.1 which afforded the opportunity for only a two-level downward adjustment of the sentencing guidelines for acceptance of responsibility. We have jurisdiction under 28 U.S.C. §1291. Bullard failed to raise the objections urged on appeal at the sentencing hearing. Because we find no plain error, we affirm.

## I.

At sentencing, the only controverted issue in the Presentence Investigation Report (PSI) raised by defense counsel was the probation officer's conclusion that Bullard's offense conduct caused the victim bank First National Bank of Rowlett (FNB) to become insolvent. The district court clearly indicated at the outset that such statement would not be taken into consideration in imposing sentence.

At the sentencing hearing, the district court adopted the factual statements contained in the PSI, the sentencing calculations recommended by the probation department, and

---

Bullard.

[2]The guidelines applicable to theft, embezzlement and other forms of theft, U.S.S.G. § 2B1.1, enhance the base level on a graduated scale according to the amount of the victim's loss. Bullard argues on appeal that the adjustment of his guidelines pursuant § 2B1.1(b)(1)(N) for losses greater than $800,000.00 does not reflect with any with economic reality the loss or risk of loss to the victim bank, and therefore, contends the sentencing court's reliance upon the total loss amount contained in the PSI (i.e., $846,058.88) was clearly erroneous.

determined the applicable guidelines were as follows: Total Offense Level of 19; Criminal History Category of I; Imprisonment Range of 30 to 37 months; Supervised Release Range of 2 to 3 years; a Fine Range of $6,000 to $60,000; and Restitution Amount of $35,113.50.

The PSI applied the rubric for calculation of loss attributable to the defendant's conduct found in U.S.S.G. § 2B1.1,[3] and calculated the "loss" to FNB at $846,058.88. This loss amount warranted a thirteen-point enhancement of Bullard's base offense level. Although no objections were raised with respect to the loss amount, defense counsel did argue at the sentencing hearing that Bullard should receive some credit for certain offsets reported by the bank. Such offsets consisted of interest earned by the bank on some of the fraudulent loans made by the defendant, the seizure of cars by the government which had been purchased by the appellant with fraudulent loan proceeds, and funds supposedly received by the Government from Bullard's in-laws in settlement on the government's attempted forfeiture of a "lake house" in which the appellant had invested fraudulent loan proceeds.

Bullard argues on appeal that because he "objected" at the

_____

[3]The applicable guideline for the defendant's knowing and willful misapplication of bank funds offense is section 2B1.1(a), which provides a for a base level of four (4). Thirteen (13) levels were added to the defendant's base offense level because his offense involved a "loss" greater than $800,000.00. U.S.S.G. §2B1.1(b)(1)(N). Additionally, his offense level was further enhanced two levels for "more than minimal planning" as provided in section 2B1.1(b)(4). The two level enhancement for abuse of a his position of trust as provided in section 3B1.3 was canceled out by a two level reduction for defendant's acceptance of responsibility for his crime provided in section 3E1.1. Bullard's adjusted offense level was thus, nineteen (19).

sentencing hearing based upon the method of calculation of the loss he has preserved the issue for appeal.  The government contends that Bullard's failure to suggest an alternative loss calculation scheme at sentencing constitutes waiver.  We believe that on this record, Bullard's failure to specify an alternative basis for calculating the loss or an alternative "loss" calculation supported by reliable evidence at the time of the sentencing hearing constitutes waiver.

We will allow sentences to be attacked on grounds raised for the first time on appeal in only the most exceptional cases.[4]  A party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review.  This court will not reverse a district court on an issue raised for the first time on appeal unless a gross miscarriage of justice would otherwise result.[5]

The presentence report calculated the loss pursuant to

---

[4]As we observed in United States v. Garcia-Pillado, 898 F.2d 36, 40 (5th Cir. 1990), "the proper administration of justice, particularly our severely strained criminal justice system, will be unduly hampered by any rule or practice which allows sentences to be attacked on grounds raised for the first time on appeal in any but the most exceptional cases."  Id.

[5]As we have previously noted, no contemporaneous objection was made to the introduction of the PSI in the district court or to its adequacy as proof of the "loss" to FNB for purposes of enhancement as provided in § 2B1.1(b)(1)(N).  Therefore, we are severely limited in our review of that issue by the "plain error" standard. An exception to the general rule of non-reviewability may be made when an issue raised for the first time on appeal concerns a pure question of law and refusal to consider it would result in a miscarriage of justice.  See United States v. Lopez, 923 F.2d 47, 50 (5th Cir.), cert. denied, ____ U.S.____, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991).  The instant issue raised for the first time on appeal warrants imposition of the rule and not the exception.

4

U.S.S.G. § 2B1.1, the guideline section listed as applicable to Bullard's conduct. Under the loss calculation provided in that guideline, whether the defendant intended to or in fact paid back the loss is wholly irrelevant. Application Note 2 of U.S.S.G. § 2B1.1 provides guidance on how to determine the loss[6] and states in pertinent part: "'Loss' means the value of property taken" and further provides as an example that "[i]n the case of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed." Application Note 3 of § 2B1.1 further provides that the sentencing court need not determine loss precisely, as long as the estimate is reasonable, and such loss "may be inferred from any reasonably reliable information available, including the scope of the operation." (emphasis added). The PSI prepared on September 16, 1992, which was adopted by the district court without objection, describes with particularity the extended scope of Bullard's operation, as follows:

> On November 27, 1990, during a special examination of the First National Bank of Rowlett (FNB) by the Office of the Comptroller of the Currency (OCC), several transactions involving Bullard were discovered which appeared to be fraudulent. Investigators from the Federal Deposit Insurance Corporation (FDIC) were notified who in turn notified the Federal Bureau of Investigation (FBI). The investigation revealed that during the period of June 1, 1987 through December 7, 1990, Bullard

---

[6]"Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative, unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that guideline." Stinson v. United States, ___ U.S. ___, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). Failure to follow such commentary could constitute an incorrect application to the guidelines, subjecting the sentence to possible reversal on appeal. U.S.S.G. § 1B1.7.

was involved in the theft, embezzlement, and misapplication of FNB funds totalling $846,058.88....

A substantial portion of the losses attributed to the defendant involved transactions between Bullard and William B. Walker, a friend and business associate. These illegal transactions were carried out in a variety of ways. Bullard prepared and forged loan documents in the names of bank customers without their knowledge. He used financial information previously submitted by these customers in order to document loan files, thus deceiving other FNB officers, directors, and federal bank examiners.

Bullard and Walker opened accounts at FNB in the names of individuals without their knowledge and used these accounts to deposit misapplied funds. Bullard made unauthorized withdrawals from customer accounts and later covered up these thefts with proceeds of other fraudulent transactions. Bullard and Walker prepared loan documents listing non-existent collateral. Bullard issued unauthorized letters of credit for a bank customer who was already over-extended and delinquent on loans at FNB. Bullard was responsible for managing FNB loan participation with other financial institutions. On several occasions, Bullard forged checks received in payment from these institutions and diverted the proceeds to accounts at FNB which he controlled....

As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous.[7] Considering the record in this case as a whole, and particularly the undisputed facts regarding the extended scope of Bullard's operation, we believe that it is clearly plausible that the loss to FNB exceeded $800,000.00.

Bullard contends that his "objections" concerning amounts paid back to the FNB, offsets for interest earned on fraudulent loans,

---

[7]United States v. Wimbish, 980 F.2d 312, 313 (5th Cir. 1992).

6

letters of credit which were never funded, <u>inter</u> <u>alia</u>, in effect alerted the district court to the argument he now raises on appeal (i.e., generally, the loss figure contained in the PSI was not supported by accurate and reasonably reliable information). We disagree.

Bullard never gave the district court a basis at the sentencing hearing to believe that his "objections" were either factually or legally relevant. Defense counsel did not even characterize his colloquy as "objections" to any facet of the PSI. His address, rather, was phrased initially as a plea for leniency and evolved into an oral motion for downward departure from the guidelines. For example, defense counsel stated:

> There was one issue and one thing that <u>I **did want**</u> to present to the Court along that line.... <u>I **was** attempting</u> to find out how much the interest income was.... So basically, I think <u>my contention **would have been**</u>.... I was trying to get an exact dollar amount to see if it made a difference in the guideline calculation.... But other than that, we have reviewed the Pre-Sentence Report on several occasions and talked about it and -- other than what was already mentioned about the reason for the bank's insolvency, <u>we have no objections</u>.
>
> * * *
>
> I think the Court -- <u>I'm going to ask the Court to **depart downward from the guidelines**</u> based on the fact that there are circumstances that are just not adequately considered by the guidelines. And I think in this case the matter of recovery, at least a part of the loss. <u>It would seem to me that a loss, which is at least partially recovered, should not be as serious</u> as a loss, none of which is recovered. They're all bad and I'm not trying to minimize the Defendant's actions here. I'm just asking the Court to take that into

consideration....[8]

The foregoing remarks of defense counsel are most aptly characterized as a plea of mitigation or for leniency. No evidence, whatsoever, was presented at the time of the sentencing hearing to support counsel's instantaneous, "on the spot" appraisal of the "loss" to FNB being an amount lower than that set forth in the PSI. No alternative calculation was presented at the time of the sentencing hearing supporting defense counsel's speculation relative to the "loss" amount. We refuse to overturn the district court's sentence based upon speculation. More to the point, Bullard's "objections" were, in reality, a motion for downward departure. Distilled to its essence, Bullard would have us review the district court's failure to depart downward from the guidelines. When the district court has imposed a sentence within the guidelines, appellate review is limited to determining whether the guidelines were correctly applied. United States v. Soliman, 954 F.2d 1012 (5th Cir. 1992).[9]

Thus, in summary, the PSI, utilizing reliable information, applied what on its face is the correct guideline. Bullard's "objections," using the term objections loosely, were irrelevant

---

[8]Transcript of Sentencing, pp. 3-5, 11 (emphasis added). ROA, Vol. 2.

[9]Generally, a claim that district court refused to depart from the guidelines provides no grounds for relief. United States v. Keller, 947 F.2d 739, 741 (5th Cir. 1991). Without hesitation we observe no abuse of discretion by the district court, whatsoever, in refusing to sustain Bullard's oral motion for downward departure cum "objection."

under that guideline, and Bullard suggested no alternative framework under which his objections could be perceived as relevant. Considering the gravamen of Bullard's "objections," the district court had no basis to determine that either another method of calculating the "loss" or that different "loss" calculation was more appropriate.

We are convinced that the district court's decision to accept the loss calculation set forth in the presentence report neither amounted to "plain error" nor to a "gross miscarriage of justice." Accommodating defense counsel's plea for leniency, the sentencing court selected the lowest sentence under the applicable guidelines, thirty (30) months, which term of imprisonment fell both within the guideline range provided by Section 2B1.1(b)(1)(N)(loss to the victim in excess of $800,000) and the guideline range provided by Section 2B1.1(b)(1)(M)(loss to the victim in excess of $500,000). Bullard's fine was waived considering the amount of restitution owed (i.e., $35,113.50).

In refusing to overturn the district court's sentence, we note that defense counsel had a number of months at his disposal between the time of Bullard's conviction and his sentencing date, and ample time within which to submit his own calculation of the "loss" amount, along with any justification therefor. Despite having been given the ample opportunity to do so, Bullard did not object to the loss determination contained within the PSI and, as previously mentioned, has therefore waived any objection to such findings.

Moreover, we cannot refrain from observing that the undisputed

9

evidence established that Bullard's extended operation placed the FNB at enormous risk, and it was later declared insolvent.[10]

Accordingly and for all of the above and foregoing reasons, we find no reversible error and hold that the district court properly adjusted Bullard's offense level upwards thirteen-levels as provided in U.S.S.G. § 2B1.1(b)(1)(N).

## II.

Bullard was sentenced on December 1, 1992, only one-month after the effective date of amended U.S.S.G. § 3E1.1 entitled "Acceptance of Responsibility." The PSI adopted by the district court applied the 1989 version of that guideline, and pursuant thereto recommended a two-level decrease in Bullard's offense level for acceptance of responsibility.[11] Bullard contends that the

---

[10]Although we observe that the PSI did note that Bullard's offense conduct caused the victim bank to become insolvent, the PSI did not suggest enhancement pursuant to § 2B1.1(7)(A), which provides: "If the offense -- (A) substantially jeopardizes the safety and soundness of a financial institution . . . increase by **4** levels. If the resulting offense level is less than level **24**, increase to level **24**." Application note 10 of the Commentary to § 2B1.1(7)(A) does not limit the meaning of the terms "substantially jeopardized the safety and soundness of a financial institution" to the situation where the institution becomes insolvent as a consequence of the defendant's conduct. Rather, the aforesaid term is defined quite broadly to include the following situations: as a consequence of the offense the institution "substantially reduced benefits to pensioners and insureds; was unable on demand to fully refund any deposit, payment, or investment; . . . or was placed in substantial jeopardy of any of the above." Id.

[11]The Sentencing Commission's amendment to § 3E1.1, effective November 1, 1992, added a new subsection (b), which provides in pertinent part that: "if the defendant qualifies for a [two-level] decrease under subsection (a)" and "the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the

10

district court erred in failing to apply the version of guideline § 3E1.1 in effect at the time of his sentencing, despite the absence of any objection. Bullard argues that he was entitled to a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(b)(1) and (2).

The government contends that even if the district court erred in applying an outdated version of the guidelines, Bullard failed to object to the PSI and thus, his sentence should only be reversed upon a finding of plain error. There being no "plain error" under the facts of this case, the government urges us to affirm the district court.

> To constitute plain error, the error must have been so fundamental as to have resulted in a miscarriage of justice.[12]

Given the limited scope of our review and having considered the entire record on appeal,[13] we uphold the sentence, since the record as a whole demonstrates a two level, as opposed to a three-level, downward adjustment for acceptance of responsibility did not result in a miscarriage of justice. We find such for the reason that, even assuming a three-level downward revision was warranted

---

following steps: (1) timely providing complete information to the government concerning his own involvement in the offense or (2) timely notifying authorities of his intention to enter a plea of guilty . . ., decrease the offense level by **1** additional level."

[12]United States v. Ebertowski, 896 F.2d 906, 907 (5th Cir. 1990).

[13]United States v. Guerrero, 5 F.3d 868, 870 (5th Cir. 1993)(citing United States v. Pattan, 931 F.2d 1035, 1043 (5th Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 2308, 119 L.Ed.2d 229 (1992)).

11

under the particular facts and circumstances of this case, Bullard's offense total offense level would have resulted in a total offense level of eighteen (18), and a consequent sentencing range of 27 to 33 months. Bullard was, in fact, sentenced to thirty (30) months, which is well-within that lower guideline range. A possible reduction in sentence of an additional three (3) months simply does not rise to the level of "a miscarriage of justice."[14]

Along these lines, we further disagree with Bullard's suggestion that he is automatically and unqualifiedly entitled to an additional one-level reduction for acceptance of responsibility under the current version of the guidelines upon demonstrating that (1) he has an offense level of 16 or greater prior to any adjustment for acceptance of responsibility and (2) that he either has provided timely information to the government or provided timely notification of his intention to plead guilty. Application Notes 3 and 5 to § 3E1.1 clearly do not support such a reading. Application Note 3 provides that "a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." Moreover, Application Note 5 provides that the determination of the sentencing judge regarding his evaluation of

---

[14]The instant case is readily distinguishable from our decision in United States v. Gross, 979 F.2d 1048 (5th Cir.1992). In Gross, our conclusion that manifest injustice resulted from the district court's application of an outdated version of the guidelines and imposition of consecutive sentences was firmly rooted in our finding that the district court's error "resulted in Gross receiving a substantially longer sentence than he would have if the USDC had used the version of the guidelines then applicable." Id. at 1052.

a defendant's acceptance of responsibility is entitled to great deference.

As we do not find either plain error or manifest injustice in the circumstances of this case, the sentence imposed is AFFIRMED.