In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2618

MICHAEL DANIELS,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 15-CV-1440 — **J.P. Stadtmueller**, *Judge.*

ARGUED FEBRUARY 21, 2019 — DECIDED OCTOBER 4, 2019

Before EASTERBROOK, SYKES, and BARRETT, *Circuit Judges.*

SYKES, *Circuit Judge.* In 1991 Michael Daniels was sentenced to 35 years in prison for drug-trafficking crimes he committed while leading the violent Brothers of the Struggle street gang in Milwaukee in the 1980s. Based on two of his many prior crimes, he was sentenced as a career offender under the then-mandatory Sentencing Guidelines. But the designation did not affect his sentencing range, which was 360 months to life with or without it.

More than two decades later, Daniels moved to vacate his sentence under 28 U.S.C. § 2255 on the authority of *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the "residual clause" in the Armed Career Criminal Act as unconstitutionally vague. Daniels argued that the identically phrased residual clause in the career-offender guideline is likewise unconstitutionally vague. Because one of the predicate convictions for his career-offender status qualified only under the residual clause, Daniels maintained that he was entitled to resentencing. The district judge disagreed, relying on *Beckles v. United States*, 137 S. Ct. 886 (2017), which forecloses vagueness challenges to the post-*Booker* advisory Sentencing Guidelines. The judge certified his decision for appeal based on uncertainty about the status of circuit precedent regarding vagueness challenges to the pre-*Booker* mandatory Guidelines.

The parties addressed that question in their initial briefs. In the meantime, a panel of this court issued a definitive answer, ruling that defendants who were sentenced under the mandatory Guidelines may bring *Johnson*-based vagueness challenges to the career-offender guideline. *Cross v. United States*, 892 F.3d 288, 304–06 (7th Cir. 2018). Applying *Johnson*, the panel in *Cross* invalidated the residual clause of the "crime of violence" definition in the career-offender guideline and applied that ruling retroactively, authorizing relief under § 2255. *Id.* at 299–304.

We directed the parties to file new briefs addressing the effect of *Cross* on this case. We now affirm. Under *Johnson* and *Cross*, Daniels was wrongly designated a career offender. But the error was harmless because it did not affect his sentence.

**I. Background**

On direct appeal 26 years ago, we described Daniels's extensive involvement with a violent drug-trafficking organization in Milwaukee in the 1980s. *See United States v. Goines*, 988 F.2d 750, 756–57, 778–79 (7th Cir. 1993). To briefly recap, Daniels helped the Brothers of the Struggle gain a foothold in the city, ran one of the gang's drug houses, recruited others to join the conspiracy, and generally "ruled with the proverbial iron fist through intimidation." *Id.* at 779.

Daniels and 14 coconspirators were arrested in 1990 and charged in a 36-count indictment with conspiracy and related drug-trafficking and firearms offenses. After a seven-week trial, a jury found him guilty of three crimes: (1) conspiracy to possess cocaine with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846; (2) using a communication facility to further the distribution of cocaine, *id*. § 843(b); and (3) using a firearm in relation to a drug-trafficking crime, 18 U.S.C. § 924(c). He was sentenced in 1991 under the then-mandatory Sentencing Guidelines. His lengthy criminal record placed him in criminal-history category V, and his offense level was 38. Two of his prior convictions—a 1982 conviction for "rape and indecent liberties to a child" and a 1988 conviction for possession of a controlled substance with intent to distribute—qualified as a "crime of violence" and a "controlled substance offense," respectively, and thus counted as the two predicates necessary to trigger application of the career-offender guideline. U.S.S.G. § 4B1.1–.2.

Accordingly, Daniels was designated a career offender based on these two convictions, which raised his criminal-history category to VI. But the designation had no effect on the sentencing range. With an offense level of 38 and a

criminal-history category of either V *or* VI, the range was the same: 360 months to life. The judge imposed concurrent sentences of 420 months for the two drug crimes and a consecutive sentence of 60 months for the firearm offense.

A few years later, the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), cast doubt on the § 924(c) conviction, and Daniels filed a § 2255 motion to vacate his sentence. The judge granted the motion, vacated the firearm conviction, and resentenced him on the two remaining counts. His offense level increased to 40 because he became eligible for a firearm-related enhancement that was previously precluded by the separate § 924(c) conviction. His criminal-history category remained the same. As before, the career-offender designation had no effect: The sentencing range was 360 months to life with or without it. The judge reimposed the same 420-month sentence for the two remaining convictions, explaining that he saw no reason to revisit the original sentence.

Daniels unsuccessfully appealed the judge's resentencing decision and thereafter filed a flurry of motions challenging other aspects of his sentence. One such motion attacked the career-offender designation. While that motion was pending, Daniels wrote to the U.S. Probation Office asking it to review his career-offender label. On review the Probation Office determined that Daniels was not in fact a career offender because the 1988 drug conviction was for simple felony drug possession, not possession with intent to distribute,[1] and

---

[1] The original charge was for possession of controlled substances with intent to distribute.

none of his other convictions qualified as career-offender predicates.

On February 9, 2009, the Probation Office sent a letter to the Bureau of Prisons removing the career-offender designation to ensure that the original misdesignation would not affect Daniels's security classification. The letter also explained that eliminating the career-offender label did not change Daniels's Guidelines sentencing range, which remained 360 months to life. The judge reviewed the letter and acknowledged that "one of [Daniels's] prior felony convictions was erroneously found to be a 'controlled substance offense' as defined in § 4B1.2, when it in fact did not meet the definition." Because the Guidelines range did not change, the judge took no further action.

In 2015 Daniels moved to reduce his sentence under 18 U.S.C. § 3582(c)(2) based on a retroactive amendment to the Sentencing Guidelines for certain drug offenses. He reminded the court that he was no longer a career offender. The Probation Office reduced Daniels's offense level in light of the amendment but advised the judge that the change did not affect the Guidelines range and therefore no adjustment in the sentence was warranted. The judge agreed and denied the motion.

Later in 2015 Daniels filed the present § 2255 motion. He again challenged his career-offender designation, only this time he invoked the Supreme Court's decision in *Johnson*, which invalidated the residual clause in the Armed Career Criminal Act on vagueness grounds. 135 S. Ct. at 2563. Daniels argued that the identically worded residual clause in the career-offender guideline is likewise unconstitutionally vague. His 1982 conviction for sexual abuse of a minor had

been counted as a crime of violence only under the residual clause, so in light of *Johnson*, Daniels had yet another reason to attack the career-offender designation.[2]

The district court stayed the motion to await further legal developments—notably, the Supreme Court's decision in *Beckles*, which rejected a *Johnson*-based vagueness challenge to the residual clause of the career-offender guideline in the post-*Booker* advisory Guidelines. *Beckles*, 137 S. Ct. at 895. *Beckles* did not, however, address whether offenders who were sentenced under the *mandatory* Guidelines may raise vagueness challenges. *Id.* at 892.

After *Beckles*, the judge lifted the stay and surveyed our pre-*Beckles* circuit precedent on vagueness challenges to the Sentencing Guidelines, including *United States v. Hurlburt*, 835 F.3d 715 (7th Cir. 2016) (en banc); *United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012); and *United States v. Brierton*, 165 F.3d 1133 (7th Cir. 1999). Briefly stated, in *Brierton* we ruled that the mandatory Guidelines cannot be challenged on vagueness grounds, 165 F.3d at 1139, and *Tichenor* extended that holding to the post-*Booker* advisory Guidelines,

---

[2] As we've noted, over the years Daniels filed multiple requests for relief from his sentence. Other than the *Bailey* challenge to the § 924(c) conviction, none were captioned as a § 2255 motion. Under *Magwood v. Patterson*, 705 U.S. 320 (2010), and *Suggs v. United States*, 705 F.3d 279, 282 (7th Cir. 2013), the sentence imposed after Daniels successfully challenged his § 924(c) conviction is deemed a new judgment for § 2255 purposes. Based on his many other requests for relief, however, the present § 2255 motion might constitute a successive petition requiring authorization. *See* 28 U.S.C. § 2255(h). Based on the "convoluted procedural history" of the case and the substantive changes in the law, the government agrees that it should not be so construed. We accept that concession.

683 F.3d at 364–65. But we overruled *Tichenor* in *Hurlburt* based on the Supreme Court's intervening decision in *Peugh v. United States*, 569 U.S. 530 (2013). *Hurlburt*, 835 F.3d at 722–25. *Beckles* clearly displaced *Hurlburt*, but the status of earlier circuit caselaw remained unclear. The judge denied the § 2255 motion but granted a certificate of appealability, noting the "analytical minefield" in our caselaw after *Beckles*.

This appeal followed. While briefing was underway, Daniels submitted additional pro se filings to the district court concerning his career-offender status. On November 14, 2018, the Probation Office again wrote to the Bureau of Prisons noting the mistaken career-offender designation and explaining that the misdesignation did not affect Daniels's Guidelines range and "will not impact the terms or conditions of his supervised release." The Probation Office also explained that if Daniels ever faces a future revocation proceeding, a criminal-history category V will be used "in any [Guidelines] calculations."

After the parties filed their initial briefs but before oral argument, another panel of this court addressed the "analytical minefield" that troubled the district judge, ruling that the Supreme Court's holding in *Beckles* is limited to the advisory Guidelines. *Cross*, 892 F.3d at 304–07. The *mandatory* Guidelines, *Cross* explained, are meaningfully different and may be challenged on vagueness grounds. *Id.* Applying the logic of *Johnson*, the *Cross* panel invalidated the residual clause in the career-offender guideline and applied that ruling retroactively to authorize § 2255 relief for two defendants who were sentenced as career offenders under the mandatory Guidelines. *Id.* at 307.

In light of *Cross*, we struck the parties' briefs and in-structed them to file new briefs addressing its effect on this case.

## II. Discussion

This § 2255 appeal presents only legal issues, so our re-view is de novo. *Hrobowski v. United States*, 904 F.3d 566, 569 (7th Cir. 2018). As we've explained, Daniels was sentenced as a career offender based on a 1988 drug conviction and a 1982 conviction for sexual abuse of a minor. The former was counted as a "controlled substance offense" for career-offender purposes. U.S.S.G. § 4B1.2(b). The latter was con-sidered a career-offender predicate under the residual clause of the definition of "crime of violence." *Id.* § 4B1.2(a)(2). For years Daniels has argued that neither conviction actually qualifies, making the career-offender label erroneous.

We begin with the obvious: The Probation Office uncov-ered and corrected the career-offender misdesignation long ago. In 2009 the Probation Office determined that the 1988 drug conviction was for simple felony possession of con-trolled substances, which doesn't qualify as a predicate controlled-substance offense. That knocked out one of the two necessary predicates for the career-offender designation, and although the error had no effect on Daniels's sentencing range, the Probation Office took steps to correct the misdes-ignation with the Bureau of Prisons.

After *Cross*, it's now clear that the 1982 conviction also should not have been counted. The government has not raised a timeliness objection to this new claim: Daniels filed his § 2255 motion within one year of the Supreme Court's decision in *Johnson*, as required by 28 U.S.C. § 2255(f)(3).

And the claim is clearly cognizable under *Cross*. The 1982 conviction for sexual abuse of a minor was included as a career-offender predicate *only* under the residual clause of the "crime of violence" definition in the Guidelines. U.S.S.G. § 4B1.2(a)(2). *Cross* invalidated the residual clause as unconstitutionally vague in light of *Johnson* and applied that ruling retroactively, authorizing relief under § 2255. 892 F.3d at 299–307. *Beckles* wasn't an obstacle in *Cross* because it only addressed the post-*Booker* advisory Guidelines. *See id.* at 304. Other circuits disagree, but *Cross* controls and *Beckles* is not an obstacle here either. *See D'Antoni v. United States*, 916 F.3d 658, 664 n.4 (7th Cir. 2019) (collecting cases from other circuits).

All this is undisputed. Everyone agrees that Daniels was mistakenly designated a career offender based on two nonqualifying predicates. "Since the parties do not dispute the error, we [need] only address whether the error [is] harmless." *United States v. Lomax*, 816 F.3d 468, 478 (7th Cir. 2016).

The parties debate whether the *Chapman* or *Brecht* standard governs the harmless-error analysis. The former applies to constitutional errors identified and reviewed on direct appeal and requires the government to demonstrate that the error "was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). The latter applies to constitutional errors identified on collateral review under 28 U.S.C. § 2254. Under *Brecht v. Abrahamson*, a state prisoner must show that the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 623, 633–34 (1993) (quotation marks omitted).

The Supreme Court has not addressed which standard applies in § 2255 cases, but some of our sister circuits have adopted *Brecht* in this context.[3] We haven't taken a firm position, and our caselaw gestures in conflicting directions. *Compare Lanier v. United States*, 220 F.3d 833, 839 (7th Cir. 2000) (applying a harmless-error test resembling the *Chapman* formulation), *with Sorich v. United States*, 709 F.3d 670, 674 (7th Cir. 2013) (using the *Brecht* standard to evaluate constitutional error in jury instructions).

We don't need to resolve that tension. The error here is harmless under any standard. We have long held that Guidelines-calculation errors that don't affect a defendant's sentencing range are harmless as a matter of law. *See, e.g., United States v. Harmon*, 721 F.3d 877, 892 (7th Cir. 2013) (concluding that any error in calculating a defendant's criminal-history category "was harmless" because "his guidelines range was the same—360 months to life— whether he was in criminal history category I or II"). It's undisputed that the career-offender misdesignation did not affect the Guidelines range: with or without it, Daniels faced 360 months to life in prison. Accordingly, no record-sensitive evaluation of the type described in either *Chapman* or *Brecht* is needed.

Daniels identifies several cases where we examined the judge's sentencing remarks to determine harmlessness even though the Guidelines range was the same with or without

---

[3] *See United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013); *United States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006); *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) (per curiam); *Ross v. United States*, 289 F.3d 677, 682 (11th Cir. 2002); *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000).

the error. *See Lomax*, 816 F.3d at 479; *United States v. Anderson*, 517 F.3d 953, 966 (7th Cir. 2008). For example, he points to language from *Lomax* stressing that "had the district court relied on [the] career offender status when choosing the appropriate sentence, the error would not have been harmless even though the guideline range would have been the same." 816 F.3d at 479. We note for starters that this was unexplained dicta. Even so, it merely suggests that *if* the judge had explicitly tied the sentence to the career-offender misdesignation, the error would have been harmful. Here the judge never mentioned the career-offender designation in announcing his sentencing decision. No further inquiry is required.

Nor does *Narvaez v. United States* help Daniels's position. There the § 2255 petitioner pleaded guilty to bank robbery and was sentenced as a career offender based on two prior Wisconsin convictions for failing to return to confinement. The career-offender designation "increased the then-mandatory sentencing range … from 100–125 months to 151–188 months," and the judge imposed a prison term at the midpoint of the enhanced Guidelines range. *Narvaez v. United States*, 674 F.3d 621, 624 (7th Cir. 2011). After the Supreme Court cast doubt on whether his prior convictions qualified as "crimes of violence," the petitioner moved to vacate his sentence under § 2255. We reversed the district court's denial of relief, holding that the petitioner "never should have been classified as a career offender and never should have been subjected to the enhanced punishment." *Id.* at 627. Daniels compares his circumstances to *Narvaez* but overlooks a crucial distinction: In that case the career-offender misdesignation *increased* the Guidelines range. Not so here.

Finally, Daniels argues that the career-offender misdesignation carries prejudicial collateral consequences. He lists three: The Bureau of Prison's security-classification rules account for an inmate's criminal-history category, the Guidelines rules on supervised release similarly consider a defendant's criminal-history category, and future changes in the law that might otherwise benefit him may not apply to career offenders.

But the Probation Office addressed any possible collateral effects of the misdesignation in two separate letters to the Bureau of Prisons. Its 2009 letter explained that Daniels is not in fact a career offender, ensuring that the initial misdesignation will not affect his security classification. In the 2018 letter, the Probation Office explained that the initial misdesignation "will not impact the terms of conditions of his supervised release" and that the correct criminal-history category will be used in any Guidelines calculations "if Mr. Daniels face[s] future revocation proceedings."

In short, although Daniels was wrongly designated a career offender, the error was harmless because it did not affect the Guidelines range. The district judge properly denied the § 2255 motion.

Affirmed