# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 06-3837

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NEAL K. ALLEN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 CR 23—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED NOVEMBER 6, 2007—DECIDED JUNE 16, 2008

_____

Before FLAUM, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Neal Allen pled guilty, pursuant to a plea agreement, to one count of mail fraud in violation of 18 U.S.C. § 1341—"Frauds and Swindles"—for having used the postal service when he provided false credentials to secure a contract. Allen held himself out as a mold-testing and remediation expert, which ultimately led the Lac du Flambeau band of the Chippewa tribe ("LdF") to secure his services. At sentencing, the district court ordered Allen to pay restitution in the amount of $363,038.47. The court refused to reduce the amount by the value of the services the LdF received from Allen

both because the task of calculating that value would be burdensome, and because Allen misrepresented himself as a "licensed professional" and thus was not entitled to such a reduction, *see* U.S.S.G. § 2B1.1 Application Note 3(F)(v). We find that the application note does not apply to Allen's situation, and that the district court should have calculated the value of the services Allen provided and modified his sentence accordingly. We therefore vacate the restitution portion of Allen's sentence and remand for a recalculation of restitution that reflects the actual loss suffered by the victims in this case.

## I. HISTORY

Neal Allen marketed himself as an expert in mold remediation, and falsified his education and employment history on a pamphlet that was distributed to promote a mold seminar. An attorney for the LdF received a copy of the pamphlet, and the attorney's contact with Allen ultimately led the LdF to enter into a contract with Allen, in September 2002, for mold-testing services. Allen and his crew performed Allen's responsibilities under the contract and tested approximately 400 LdF buildings for mold. Allen sent the mold samples to Aerotech Laboratories, Inc., after committing to pay the laboratory $71,000 for its analysis of the samples. Allen collected full payment from the LdF (approximately $286,000) on December 30, 2002, and then promptly left the country—cash in hand—for the Dominican Republic, where he established residence. During that same time period, Allen also became a naturalized citizen of Costa Rica, under a different name. Allen never paid Aerotech for testing the samples.

In October 2004, Allen was indicted by a grand jury in the Western District of Wisconsin on six counts of mail fraud, *see* 18 U.S.C. § 1341. He was ultimately convicted, in March 2006, of one count of mail fraud, to which he pled guilty. In the plea agreement, Allen agreed:

> to pay restitution for all losses relating to the offense of conviction and all losses covered by the same course of conduct or common scheme or plan as the offense of conviction. The exact restitution figure will be agreed upon by the parties prior to sentencing or, if the parties are unable to agree upon a specific figure, restitution will be determined by the Court at sentencing.

At the plea hearing, Allen stated to the court:

> I falsified credentials to obtain a contract with the Lac du Flambeau tribe, and I used the federal mails or I used the FedEx, which is considered federal mails, to send the lab samples to the lab. That's what I did.

In exchange for his plea, the government agreed to recommend that Allen's sentence be reduced to the maximum extent possible for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a)-(b), and that Allen's plea would resolve all possible criminal violations in the Western District of Wisconsin related to this course of Allen's criminal conduct.

In the presentence report (PSR) and its addendums, the probation officer calculated Allen's base offense level as six and his Criminal History Category as I. The probation officer recommended a twelve-level enhancement pursuant to United States Sentencing Guideline (U.S.S.G.) § 2B1.1(b)(1)(G)—because the proposed loss amount

was more than $200,000 but less than $400,000—a two-level enhancement for obstruction of justice, a two-level decrease under § 3E1.1(a) for acceptance of responsibility, and an additional one-level decrease pursuant to § 3E1.1(b) for timely providing information to the government and/or timely notifying authorities of his intention to plead guilty. Allen's total offense level was 17. The probation offer proposed that Allen be ordered to pay $294,193.47 in restitution to the LdF, and $71,345.00 to Aerotech Laboratories.

Allen filed a written objection to the PSR, specifically contesting the amount of loss attributable to him and the proposed restitution figures. Allen's position was that the loss figure could not exceed the amount of loss actually caused; with respect to the LdF, the figure should have taken into account the value of Allen's work and should have been reduced in its entirety because the LdF did not suffer any monetary loss. With respect to Aerotech, Allen argued that the court should not include the unpaid balance to the laboratory because that figure merely reflected a breach of contract between Allen and Aerotech.

In response, the government argued that Application Note 3(F)(v) of U.S.S.G. § 2B1.1 did not allow for a reduction in the amount of loss for the value of services provided by Allen to the LdF because Allen held himself out as licensed professional when he deceived the LdF into contracting with him. At the sentencing hearing, the government reduced its proposed restitution amount by $2,500—the value of a microscope that had been seized and that Allen agreed to turn over for restitution.

At sentencing, the district court adopted the calculations contained in the PSR and its addendums, finding the

total amount of loss attributable to Allen to be $363,038.47. The court decided that the losses sustained by Aerotech were direct and reasonably foreseeable pecuniary harm that resulted from Allen's offense. The district court also decided that Allen was not entitled to have the loss amount reduced by the value of the mold-testing services he provided to the LdF because he had misrepresented his credentials and made himself appear as "a highly qualified expert microbiologist in the field of mold remediation." The district court explained to Allen during the sentencing hearing:

> Although you've suggested that the tribe's pecuniary loss should be reduced by the actual value of the services provided, trying to calculate that value would place an undue burden on the court and it's certainly unlikely that the purported value would exceed the approximately $81,000 that the tribe expended to house its members who were displaced from their homes during the fraudulent remediation scheme and for which no restitution is being ordered because the costs cannot be adequately verified. The fact is the tribe would never have agreed to pay you had it not been for your fraudulent misrepresentations.

The court applied the relevant twelve-level enhancement, *see* U.S.S.G. § 2B1.1(b)(1)(G), based on the PSR's proposed loss amount, and sentenced Allen to 26 months' imprisonment. Allen was ordered to pay as restitution $291,693.47 to the LdF and $71,345 to Aerotech. Allen filed a timely notice of appeal.

## II. ANALYSIS

Allen appeals the district court's restitution calculation, arguing that the amount should have been reduced by the value of the services he performed.[1] The government argues that Allen cannot challenge the district court's calculation of restitution both because he waived such a challenge by not raising it during the sentencing hearing, and because he delegated the restitution calculation to the court—the plea agreement provided that if the amount of restitution could not be agreed upon by the parties, the court would determine the figure at sentencing. In any event, the government argues, the district court's calculation of the restitution amount was correct because the tests Allen conducted are useless to the tribe in light of the truth about Allen—that he is not an expert in the field of mold remediation.

We will dispose of the government's "delegation" argument first. A party that agrees to have the district court decide a restitution amount implicitly conditions his assent on the court's calculation of that amount within the parameters of the law. The government cites *United States v. Peterson*, 268 F.3d 533 (7th Cir. 2001), for the proposition that once a defendant grants the district court authority to calculate restitution, the defendant is bound by whatever amount the district court designates, regardless of how that figure was determined (*i.e.*, in accordance with the law, or not). Under the government's position, a district court could arbitrarily choose

---

[1] Allen does not appeal the loss calculation insofar as it affected the non-restitution portions of his sentence, *i.e.*, his term of imprisonment, so we will only consider the loss calculation as it relates to Allen's restitution order.

a restitution figure out of thin air—say, $50 million—and order that against a defendant who caused only $1 million in actual losses, on the grounds that the defendant "delegated" the calculation authority to the court. *Peterson* suggests nothing of the sort. *See id.* at 533-35.

In Peterson's plea agreement, he agreed to pay restitution "for all losses relating to the offense of conviction and all losses covered by the same course of conduct or common scheme . . . ." *Id.* at 533-34. The district court calculated restitution and included amounts for victims of Peterson's course of conduct who were not directly harmed by the criminal counts to which Peterson pled—though the victims *were* harmed by the broader criminal scheme effectuated by Peterson, which related to the offense of conviction. Peterson argued that the district court "lacked authority to order restitution other than with respect to the two counts of conviction." We held that because Peterson had agreed to make restitution to all victims of his course of conduct, and because he agreed that the district court could decide the restitution details, if necessary, Peterson was in no position to challenge the district court's order of restitution in favor of the very victims of Peterson's course of conduct. *Id.* at 535.

Allen's case is different because, unlike Peterson, he challenges the veracity of the district court's restitution calculation, not the authority of the district court to make that calculation. *See id.* ("Peterson does not contend that the judge's calculation was mistaken; he argues only that the district judge lacked authority to specify *any* amount."). When reviewing a district court's calculation of restitution pursuant to a plea agreement in which the defendant granted the district court the power to set the precise

amount, we need not abandon customary restitution-review practices. The statute by which Allen is being made to pay restitution—18 U.S.C. § 3663A(a)—applies regardless of whether he is ordered to pay restitution against his will, or as a condition of his plea. And, "for restitution purposes the statute implicitly requires that the restitution award be based on the amount of loss actually caused by the defendant's offense." *United States v. Rhodes*, 330 F.3d 949, 953 (7th Cir. 2003) (citing *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999) (emphasis removed)); *see also* 18 U.S.C. § 3663(a)(B)(i)(I). Thus, we will consider whether the district court correctly calculated the actual loss caused by Allen's conduct. If Allen's objection to the district court's restitution-calculation was preserved, we will review the calculation for an abuse of discretion. *See United States v. Swanson*, 394 F.3d 520, 526 (7th Cir. 2005). The government's waiver argument, however, suggests that we should review the calculation for plain error.

It is true that at sentencing Allen did not restate his objection to the PSR's calculation of the amount of loss. The court asked Allen whether he had any objections that his attorneys had not raised on his behalf. Allen answered, "No, I don't." When the court asked Allen's attorney whether there were any things Allen was still objecting to within the PSR, the attorney responded that there was not, in light of the fact that the government took off two levels for abuse of trust. The court then calculated the total offense level at 17 and the advisory range as 24 to 30 months' imprisonment. Allen's attorney finished with, "we have no objections to those calculations." On these statements alone, the government presents a compelling waiver argument—that Allen intentionally relinquished

his known right to object to the restitution calculation. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) ("The touchstone of waiver is a knowing and intentional decision."). The restitution calculation appears in the PSR, and Allen objected to that calculation prior to the sentencing hearing. Yet, Allen's attorney did not object at sentencing to the restitution calculation. Instead, the attorney affirmatively stated that he had no objections to the calculations. "A defendant who does not object to his sentence when asked whether he has any objections *may* communicate an intention to relinquish any arguments related to his offense calculation . . . ." *United States v. Brodie*, 507 F.3d 527, 531 (7th Cir. 2007) (emphasis added).

However, "a lawyer's statement at sentencing that the defendant does not object to anything in the presentence report does not inevitably constitute a waiver." *Jaimes-Jaimes*, 406 F.3d at 848. If a specific objection was not raised at sentencing, we will view it as having been waived if the defendant had a strategic reason to forego the argument, that is, only if the defendant's counsel would not be deficient for failing to raise the objection. *Brodie*, 507 F.3d at 531-32; *Jaimes-Jaimes*, 406 F.3d at 848. Allen had no strategic reason to forego at sentencing his challenges to the restitution figure. The issue had been at the forefront of the district court's considerations leading up to sentencing, and the court itself had asked the parties, via a memo, to respond to questions it had about the amount of loss attributable to Allen's conduct. Further, as Allen points out, the district court did not seemingly consider the objection waived, and addressed it directly in its pronouncement of Allen's sentence and its discussion of the restitution amount: "Although you've suggested that

the tribe's pecuniary loss should be reduced by the actual value of the services provided . . . ." The issue of the restitution calculation was central to the district court's considerations both before sentencing and throughout. There was no strategic reason for failing to raise the objection at sentencing, and Allen's attorneys could be faulted for their omission. Thus, the objection was not waived by Allen. *See Jaimes-Jaimes*, 406 F.3d at 848.

That being said, Allen's failure to raise the objection constitutes a forfeiture that was " 'accidental rather than deliberate.' " *Id.* at 848 (quoting *United States v. Richardson,* 238 F.3d 837, 841 (7th Cir. 2001)). As such, our review is for plain error. *United States v. Thigpen*, 456 F.3d 766, 771 (7th Cir. 2006). "To establish plain error, [Allen] has to demonstrate a clear error that affects a substantial right and, moreover, impacts 'the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733-34 (1993)). Even if we spot such an error in the court's restitution calculation, we do not have to correct the error, but we may do so if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Kibler*, 279 F.3d 511, 514 (7th Cir. 2002) (quoting *Olano*, 507 U.S. at 732).

We now consider whether the district court's restitution calculation (or rather, its want of a calculation) reflects an error so clear that it must be corrected. The district court decided against calculating the actual loss suffered by the LdF, stating that "trying to calculate that value would place an undue burden on the court." The court guessed that the value the LdF received from Allen's services would be less than $81,000—the amount the LdF allegedly spent housing its members while they were

displaced from their homes during the mold testing. The $81,000 was not included in the district court's calculation, however, because those costs could not "be adequately verified." So the district court opted against calculating the actual loss caused by Allen—the total pecuniary loss minus the value received by the LdF—and conjectured that if it had calculated the value received by the LdF, it would have been less than a non-verifiable figure that the LdF claims it spent on housing its members.

In addition to the "undue burden" cited by the court, it also seems to have decided against calculating the actual loss because Allen represented himself as, in the district court's words, "a highly qualified expert microbiologist in the field of mold remediation." According to the court, the tribe would not have hired Allen if it had known the truth about him, so its entire loss of $291,693.47 was attributable to Allen.

We must decide whether the district court was required to calculate the LdF's actual loss and order restitution accordingly—as opposed to ordering restitution for the entire amount the LdF paid to Allen for his services. Under the Mandatory Victim Restitution Act (MVRA), *see* 18 U.S.C. § 3663 *et seq.,* restitution is available to victims to the extent that it would have been available had the victims pursued a civil suit against the criminal. *See United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999). When the victims are seeking to recover their losses from a defendant, they must "prove that the defendant caused the loss," and "show that the loss would not have occurred but for [the defendant's] misconduct." *Id.* "The proper amount of restitution is the amount wrongfully taken by the defendant." *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999). The government bears the burden of

demonstrating the losses suffered, and "as part of its burden to prove a restitution amount, the government must deduct any value that a defendant's fraudulent scheme imparted to the victims." *United States v. Swanson*, 483 F.3d 509, 515 (7th Cir. 2007); *Swanson*, 394 F.3d at 527-28. Allen's position was, and is, that he performed his duties under the contract, and that his mold-testing of 400 homes was of significant value to the LdF and the value should have been calculated and deducted from the restitution amount.

The government argued that Allen was not entitled to the customary reduction for the value of services rendered because, in its view, Allen's conduct fell within the purview of Application Note 3(F)(v) of U.S.S.G. § 2B1.1, which provides:

> In a case involving a scheme in which (I) services were fraudulently rendered to the victim by persons falsely posing as licensed professionals . . . loss shall include the amount paid for the property, services or goods transferred, rendered, or misrepresented, with no credit provided for the value of those items or services.

Section 2B1.1 of the sentencing guidelines provides a framework for calculating the amount of loss attributable to a defendant *for sentencing purposes*; "loss" is the greater of the actual loss ("reasonably foreseeable pecuniary harm that resulted from the offense") or intended loss. U.S.S.G. § 2B1.1, Application Note 3(A)(i)-(ii). However, the determination of loss for a defendant's sentencing range is different than that for his *restitution* obligations: "[w]hile for *sentencing* purposes 'loss' is defined as the greater of *either* the 'actual' or the 'intended' amount lost due to the fraud, for *restitution* purposes the statute implicitly requires

that the restitution award be based on the amount of loss *actually caused* by the defendant's offense." *Rhodes*, 330 F.3d at 953 (internal citation omitted). A court could find that a defendant intended a large amount of loss for sentencing purposes, but then order a much-reduced amount in restitution in light of the actual losses suffered by the victims.

The government's first problem in relying on the application note to avoid calculating the actual loss Allen inflicted is that it does not apply to restitution calculations. It may be instructive insofar as a calculation of loss for sentencing purposes may mirror a calculation of loss for restitution purposes, but it is not controlling. The sentencing guidelines address restitution in § 5E1.1, and that section does not cross-reference § 2B1.1.

The government's second problem is that, even if Application Note 3(F)(v) was relevant to restitution calculations, Allen's conduct does not seem to fall under the provision therein. It is true that Allen was holding himself out as a highly qualified expert, but the profession in which he was scheming was not a licensed one. As Allen pointed out, he never claimed to be a licensed professional, and the state of Wisconsin does not license microbiologists—"there was no license that he could have pretended to possess." To the extent that the district court relied on the notion that Allen was not entitled to a reduction in restitution because of feigning licensure, it was mistaken. And that error was plain because it subjected Allen to a condition the law does not contemplate, and thus compromised " 'the fairness, integrity, [and] public reputation of judicial proceedings.' " *Thigpen*, 456 F.3d at 771 (quoting *Olano*, 507 U.S. at 733-34).

It was plain error for the district court not to calculate the actual loss suffered by the LdF. Courts do not have

inherent authority to order restitution, and " 'may do so only as explicitly empowered by statute.' " *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003) (quoting *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996)). Under 18 U.S.C. § 3663(B)(i)(I), the court is directed by Congress to consider the "amount of loss sustained by each victim as a result of the offense." In the realm of restitution under 18 U.S.C. § 3663, the "amount of loss" sustained by victims is synonymous with "actual loss," and its calculation must take into account (and deduct) pecuniary value the victim(s) gained by way of the defendant's conduct. *See Swanson*, 483 F.3d at 515; *Swanson*, 394 F.3d at 527-28. By failing to calculate the actual losses of the LdF, the district court *may* have required Allen to pay in restitution more than he owed; this error affected Allen's substantial rights. *See Randle*, 324 F.3d at 558 ("In requiring Randle to pay several thousand dollars in restitution, without a statutory basis for doing so, the error affects Randle's substantial rights.").

We say "may" because it could be that after inquiring into whether the LdF received benefits or value from Allen's services, the district court decides that Allen's work was worthless to the LdF (as is argued by the government). Alternatively, the district court may find that the testing was of some value to the LdF, and deduct that value from the amount the LdF paid Allen. We will review for an abuse of discretion whatever determination the district court makes about the actual loss suffered by the LdF, assuming the court engages in a proper calculation of that loss and credits Allen for the value of the services he provided.

### III. CONCLUSION

We AFFIRM Allen's sentence, but we VACATE the restitution portion of the sentence and REMAND for the district court to redetermine the restitution amount.