In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2824

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN T. BURNS, III,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 394 — **Charles P. Kocoras**, *Judge.*

ARGUED SEPTEMBER 13, 2016 — DECIDED DECEMBER 12, 2016

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* John Burns made fraudulent misrepresentations when soliciting investments for his employer, USA Retirement Services ("USARMS"). Burns told investors that he had experience managing investments and that he had personally invested in USARMS's promissory notes. His statements were false. Moreover, without Burns's knowledge, the investment opportunity was fraudulent. USARMS's owners were operating a Ponzi scheme.

With USARMS's owners out of the picture for various reasons, the government filed a superseding indictment against Burns. The government alleged that Burns committed fraud by making material misrepresentations to investors. A jury convicted Burns on two counts of wire fraud and three counts of mail fraud. Despite not alleging that Burns knew of or participated in the Ponzi scheme, the government sought to hold Burns accountable for the entire $3.3 million the investors that he solicited lost as a result of the Ponzi scheme. The district court enhanced Burns's sentence, ordered restitution, and ordered forfeiture based on the victims' $3.3 million total loss.

On appeal, Burns argues that there was insufficient evidence to convict him of making material misrepresentations. Burns also challenges the sentencing enhancement and the restitution order on grounds that the district court did not determine that he proximately caused the victims' loss. Finally, Burns argues that the forfeiture order was improper because it was based on the victims' loss and not on his gain. Because there was sufficient evidence to convict, we affirm Burns's conviction. But because the district court erred in calculating the sentence, restitution order, and forfeiture order, we remand for resentencing.

## I. BACKGROUND

At USARMS, Burns's primary job was to provide estate-planning services to clients. In addition to those services, Burns would offer clients an opportunity to invest in promissory notes that USARMS sold. The notes were allegedly backed by Turkish bonds. USARMS's owners, Francois Durmaz and Robert Pribilski, claimed to have a connection in the Turkish government that allowed them to purchase the bonds at a below-market rate. USARMS guaranteed an 8.5

percent rate of return and told investors that returns could be as high as 14 percent.

As the high guaranteed rate of return might have hinted, the investment opportunity was too good to be true. USARMS never purchased Turkish bonds. Instead, Durmaz and Pribilski used the investments for their personal use and to pay earlier investors "returns" on their investment—indicia of a classic Ponzi scheme.

The government's original criminal complaint charged only Durmaz with wire fraud in connection with the Ponzi scheme. Perhaps aware that the scam had run its course and was about to collapse, Durmaz fled the country before the original complaint was filed. Roughly two years later, the government filed an indictment against Durmaz, Pribilski, and Burns, charging them with various counts of wire and mail fraud. Pribilski pled guilty to the charges. But before he could be sentenced, he died.

With only Burns left alive and in the United States, the government filed a superseding indictment. The government alleged that Burns had induced certain victims to invest in USARMS by falsely telling them that he had experience managing investments and that he and his family had invested in the Turkish bonds. The superseding indictment made no reference to the Ponzi scheme. In its response to Burns's motion *in limine*, the government stated that the "Defendant is not alleged to have knowingly participated in the Ponzi scheme" and that the lies about his credentials and his personal investment are "the only crimes that defendant is alleged to have committed." (R. 104 at 4.)

At trial, the government called six of the victims Burns had solicited investments from. Five victims testified that they had relied on Burns's statements that he and his family had invested in the Turkish bonds. A sixth victim testified that Burns said that he had experience handling investments and that he personally allocated Turkish bonds to investor accounts.

At the close of evidence, the jury convicted Burns on two counts of wire fraud and three counts of mail fraud. The district court sentenced Burns to eighty-four months in prison and three years' supervised release. When calculating the sentence, the district court applied an 18-level enhancement to account for the roughly $3.3 million Burns's victims lost in their investment with USARMS. The district court also entered a restitution order and forfeiture order, both for $3.3 million. Burns filed a motion for judgment of acquittal and a motion for a new trial. The district court denied the motions, and this appeal followed.

## II. ANALYSIS

On appeal, Burns challenges his conviction, his sentence, the restitution order, and the forfeiture order. Burns argues that his statements about his financial background and his personal investment in USARMS were puffery and thus could not have been material misrepresentations. Regarding the length of his sentence and the restitution order, Burns contends that the district court did not establish that he proximately caused the victims' loss. Accordingly, Burns claims that the court improperly enhanced his sentence and ordered him to pay more in restitution than the loss that he caused. Finally, Burns challenges the forfeiture order because the court ordered forfeiture based on the victims' $3.3 million loss

instead of the amount that he gained from his unlawful conduct.

*A. Sufficiency of the Evidence*

We review *de novo* the denial of a motion for the judgment of acquittal. *United States v. Peterson*, 823 F.3d 1113, 1120 (7th Cir. 2016). In reality, however, we apply the same analysis that we use when reviewing for the sufficiency of the evidence. *Id.* The burden for proving insufficiency of the evidence is "heavy" and "nearly insurmountable." *United States v. Dessart*, 823 F.3d 395, 403 (7th Cir. 2016). Burns must prove "that even after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found him guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted); *see also United States v. Clarke*, 801 F.3d 824, 827 (7th Cir. 2015).

A statement is material if it has the ability to influence a person's decision. *United States v. Seidling*, 737 F.3d 1155, 1160 (7th Cir. 2013) (citing *Neder v. United States*, 527 U.S. 1, 16 (1999)). Burns's argument that his statements were puffery, akin to a used-car salesman's sales pitch, is unavailing. "Puffing" is "[t]he expression of an exaggerated opinion—as opposed to a factual misrepresentation—with the intent to sell a good or service." *Black's Law Dictionary* 1269 (8th ed. 2004). We have said that puffery is nonactionable because no reasonable person would rely on such "empty superlatives." *F.T.C. v. Trudeau*, 579 F.3d 754, 765 (7th Cir. 2009).

Whereas puffery involves ambiguous and vague promises, Burns's comments were factual and specific. He told investors that he and his family had invested in the bonds and were reaping the rewards of having done so. He told investors

that he had a history of managing investments. He told investors that he had quit a reputable bank job to work at USARMS. All of these were factual misrepresentations, not exaggerated opinions. All of these were a far cry from promises of a "good" investment, "can't miss" opportunity, or other equivocal sales pitches buyers hear every day and are expected to discern and discount. *United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996). Accordingly, the jury's verdict will be affirmed.

### B. Sentencing, Restitution, and Forfeiture

The government argues that Burns waived or at least forfeited his arguments about his sentence, the restitution order, and the forfeiture order. Consequently, we must first determine whether he preserved, forfeited, or waived his objection to the calculations.

### 1. Waiver

To preserve an issue for appeal, an appellant must make a "timely and specific objection" at trial in order to notify the court and the opposing party of the potential error and the ground for objection. *United States v. Ousley*, 698 F.3d 972, 975 (7th Cir. 2012).

Burns failed to preserve his objections in this case. When discussing the restitution and forfeiture orders at sentencing, Burns asked only if he alone would be responsible for the $3.3 million or if the awards would be apportioned (presumably among USARMS's owners and himself). The apportionment argument does not articulate a specific objection to how restitution and forfeiture were calculated.

Nor did Burns specifically object to the loss calculation used to enhance his sentence. At sentencing, Burns argued that he should be responsible for 10 percent of the victims'

$3.3 million loss. But that argument was based on the fact that $3.3 million was only 10 percent of the entire loss that the Ponzi scheme caused. Although Burns intimated that he was not responsible alone for the loss, he never articulated the proximate-cause objection that he makes here.

Because Burns did not properly preserve his objection during sentencing, we must determine whether Burns waived or merely forfeited his objection. "Waiver is the intentional relinquishment of a known right" and precludes judicial review by extinguishing the error. *United States v. Butler*, 777 F.3d 382, 387 (7th Cir. 2015) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). Forfeiture, however, "is the failure to make the timely assertion of a right … by accident or neglect." *Id.* (citation and internal quotation marks omitted). Courts have only a limited power to correct forfeited errors. *Id.* at 386 (citing *Olano*, 507 U.S. at 731).

The difference between forfeiture and waiver is hard to delineate. *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009). At one point, the case law in this circuit suggested that a defendant's failure to specifically object at sentencing established waiver in the strict sense of the term. *See United States v. Martinez-Jimenez*, 294 F.3d 921, 923 (7th Cir. 2002); *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001). We have since declined to read those early cases as creating a bright-line rule that every objection not raised at sentencing is waived. Instead, we have held that "the important concern is whether a defendant chose, as a matter of strategy, not to present an argument." *Garcia*, 580 F.3d at 541; *see also United States v. Brodie*, 507 F.3d 527, 531 (7th Cir. 2007); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). A strategic decision demonstrates that the defendant made a knowing and

intelligent waiver and did not negligently fail to raise the argument. The analysis requires some conjecture on our part in light of the record viewed as a whole. *Garcia*, 580 F.3d at 542.

Conscious of the rule that waiver is to be "construed liberally in favor of the defendant," *Butler*, 777 F.3d at 387, we cannot find that Burns waived his objections at sentencing.

The government offers three strategic reasons why Burns waived the objections that he makes here: (1) he accepted responsibility for the total loss so that he could argue for a lesser prison sentence, which would allow him to work and repay the debt quicker; (2) he agreed that $3.3 million was the appropriate number; and (3) he accepted $3.3 million because it was less than the total loss that the Ponzi scheme caused. All three arguments hinge on the idea that Burns accepted that he was responsible for the victims' $3.3 million loss. All three arguments fail because the sentencing transcript belies Burns's acceptance.

We consider restitution and forfeiture first. At sentencing, Burns questioned whether he would be responsible for the entirety of the orders. By asking whether the restitution and forfeiture orders would be apportioned, Burns necessarily implied that he should have to pay less than $3.3 million. The record does not reflect a strategic decision to accept the $3.3 million figure because Burns actually argued (although in a legally deficient manner) that the orders should be reduced. The omission was not "the result of a deliberate and strategic choice to pursue one sentencing argument" over another, and therefore, the argument is not waived. *Butler*, 777 F.3d at 387.

The same holds true for Burns's objection to the loss amount used to enhance his sentence. Again using the $3.3

million figure, the district court increased Burns's offense level by 18. U.S.S.G. § 2B1.1(b)(1)(I) (2014). Although failing to properly preserve the objection, Burns argued at sentencing that using $3.3 million to enhance his sentence was excessive because of how small a portion his investors' losses were out of the entire loss caused by the Ponzi scheme. That the argument was based on questionable legal reasoning is irrelevant. However weak the argument presented at sentencing may have been, it shows that he did not intentionally waive his objection to the loss amount used to enhance his sentence. A defendant does not strategically waive an argument that was inartfully articulated; instead, counsel was deficient for failing to properly raise the objection. *Brodie,* 507 F.3d at 532.

Despite our discussion above, the dissent makes much of the fact that Burns "agreed" with the $3.3 million number. The full dialogue at the sentencing hearing contradicts the dissent's argument that Burns agreed that he *proximately caused* the full loss. The judge told Burns that he thought Burns agreed with the government's loss number. Burns's counsel responded that, "Well, we agree with the number. The only question is whether or not he is going to be responsible for the entire amount, which, I guess, is a restitution issue, or if it will be apportioned." (R. 174 at 2.) The second part of Burns's response discredits any claim that he agreed that he caused the victims' full loss. That interpretation is buttressed by additional dialogue at sentencing. Moments later, Burns's counsel again said, "We agree that that is the correct number, Judge." (R. 174 at 3.) But that statement came only after counsel stated that $3.3 million "is the total amount of the loss." (R. 174 at 3.) In context, we read Burns's comments at sentencing as agreeing only that his victims lost $3.3 million, not that he proxi-

mately caused the full loss. Burns did not make a strategic decision to forgo the arguments he raises here when he actually argued that he shouldn't be responsible for the entirety of the victims' loss. At most, Burns's attorney negligently failed to raise the proximate-cause and forfeiture arguments. *United States v. Jenkins*, 772 F.3d 1092, 1096 (7th Cir. 2014).

We also remain unconvinced that Burns strategically decided to accept the $3.3 million figure so that he could plead for leniency in his sentence. Burns asked the judge for a lesser sentence so that he could work to pay off the restitution and forfeiture orders. Again, however, that argument did not depend on accepting responsibility for the full $3.3 million that his victims lost. He argued for leniency after he argued that he should be responsible for only 10 percent of the victims' loss for sentencing purposes and that the restitution and forfeiture awards should be apportioned.

"Our duty when considering waiver is to divine from the record an intent to forego an argument … ." *Garcia*, 580 F.3d at 542. We cannot divine a strategic decision to forgo an argument when a defendant makes both arguments. *See Butler*, 777 F.3d at 387 (finding forfeiture because the "omission was due to defense counsel's oversight, rather than the result of a deliberate and strategic choice to pursue one sentencing argument while forgoing another"). The substance of what Burns argued at sentencing would have had the same effect as the arguments he makes on appeal—namely a shorter sentence and reduced restitution and forfeiture orders. Agreeing with the victims' loss total or indicating that a punishment is just no more signifies a knowing and intelligent waiver than explicitly telling the district court there are no further objections to a sentence. "We must consider the lawyer's statement in

light of the surrounding circumstances and determine whether counsel made a knowing and intentional decision." *Garcia*, 580 F.3d at 542. Without a convincing strategic explanation that would demonstrate a knowing and intelligent waiver, we conclude that Burns forfeited—but did not waive—his objections. *Jaimes-Jaimes*, 406 F.3d at 848.

*2. Plain-Error Review*

Because Burns forfeited his arguments, we review the district court's decision for plain error. Under plain-error review, we reverse the district court "only when we find: (1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010).

We pause here to address the dissent's concern about our application of plain-error review. Our opinion should not be read as chastising Judge Kocoras for failing to address the arguments Burns presents here: indeed, we review for plain error because we explicitly hold that Burns did not preserve the arguments he now makes. Judge Kocoras, a learned and experienced jurist, did not intentionally or knowingly fail to address the arguments Burns raises here. The second element in plain-error review, that the error was "plain," means that the error was "clear" or "obvious." *Olano*, 507 U.S. at 734. We have never required, however, that the error be obvious to the district court, only that the error was obvious under the law. *See Jenkins*, 772 F.3d at 1098 (holding that the district court plainly erred when it adopted "erroneous information in a PSR" no matter how "correct such information appears"); *see also Henderson v. United States*, 133 S. Ct. 1121, 1130 (2013) ("The Rule's requirement that an error be 'plain' means that

lower court decisions that are questionable but not *plainly* wrong (at time of trial or at time of appeal) fall outside the Rule's scope."). That Judge Kocoras understandably did not recognize the errors we address here does not factor into our analysis of whether the errors were plain.

If a plain error has occurred, the next step is to determine whether the defendant's substantial rights are affected. Substantial rights are affected when the defendant can show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Hurlburt*, 835 F.3d 715, 725 (7th Cir. 2016) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). The defendant need not show that the outcome *certainly* would have been different. *Id.*; *see also United States v. Feinberg*, 89 F.3d 333, 336 (7th Cir. 1996) (holding that to show prejudice, a defendant "must show that but for the [error], the outcome of the trial probably would have been different"). We agree with the dissent that plain-error review is to be applied rigorously. *United States v. Hallahan*, 756 F.3d 962, 979 (7th Cir. 2014). We disagree, however, about whether the facts show a reasonable probability that, but for the error, the outcome of the proceeding would have been different. For the reasons discussed below, we hold that there is a reasonable probability that the outcome at sentencing would have been different absent the error.

*a. Sentencing Enhancement*

Under the Sentencing Guidelines, a defendant's base level is increased according to the loss associated with the crime. U.S.S.G. § 2B1.1(b)(1). "Loss" in § 2B1.1(b)(1) is defined as

"the greater of actual loss or intended loss."[1] U.S.S.G. § 2B1.1 cmt. n.3(A). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). "Reasonably foreseeable pecuniary harm" means loss that the defendant knew or reasonably should have known "was a potential result of the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(iv). We have held that determining whether loss was reasonably foreseeable requires causation analysis. *United States v. Domnenko*, 763 F.3d 768, 777 (7th Cir. 2014); *United States v. Whiting*, 471 F.3d 792, 802 (7th Cir. 2006). Causation includes two separate analyses: but for causation and proximate causation. *Whiting*, 471 F.3d at 802.

A district court that does not adequately explain a sentence commits procedural error. *United States v. Leiskunas*, 656 F.3d 732, 738 (7th Cir. 2011). Further, a district court errs when it fails to set out "explicit and clear factual findings and determinations" that form the basis of its decision. *United States v. Titus*, 821 F.3d 930, 934 (7th Cir. 2016). Thus, we have remanded cases when the district court improperly applied the causation analysis and when the district court did not address causation at all. *Whiting*, 471 F.3d at 802; *Domnenko*, 763 F.3d at 776–77.

The words "reasonable foreseeability" and "proximate cause" and their variants do not appear in the sentencing transcript. At most, the district court held that Burns's *conduct* was not reasonable in that he should have verified the investments instead of trusting what USARMS's owners told him about

---

[1] Intended loss is irrelevant in this case because the district court based its enhancement on the victims' actual loss.

the Turkish bonds. That his conduct was unreasonable, however, does not necessarily mean that he proximately caused the victims' loss. Without a clear ruling on proximate causation, the district court erred.

Because the court did not discuss proximate causation, Burns's substantial rights were affected. The district court used the $3.3 million loss number to enhance Burns's sentence by 18 levels. The 18-level enhancement increased Burns's sentencing guideline range from 12–18 months to 108–135 months. When a district court improperly applies a sentencing enhancement, the defendant's substantial rights are affected. *See United States v. Doss*, 741 F.3d 763, 768 (7th Cir. 2013); *Leiskunas*, 656 F.3d at 738; *cf. United States v. Tovar-Pina*, 713 F.3d 1143, 1148 (7th Cir. 2013) (holding that, when a district court judge increases a sentence but fails to explain why, the error is not harmless and requires remand for resentencing). Even though the district court may determine that Burns proximately caused the actual loss on remand, there is a reasonable probability that the outcome will be different because the government did not claim that Burns knew about the Ponzi scheme. For that reason alone, the Ponzi scheme can reasonably be seen as a superseding cause that breaks the causal chain.

Finally, an error that significantly increases a defendant's prison sentence without a proper factual basis seriously impugns the fairness, integrity, and public reputation of judicial proceedings. *Doss*, 741 F.3d at 768. Thus, the district court committed reversible plain error.

*b. Restitution*

Courts lack inherent authority to order restitution and may do so only when authorized or required by statute. *United States v. Locke*, 643 F.3d 235, 246 (7th Cir. 2011). The Mandatory Victims Restitution Act ("MVRA") requires courts to order restitution if the offense of conviction "involves as an element a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663A(a)(2). Both wire fraud and mail fraud include as an element a scheme to defraud. *United States v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014).

The MVRA has a proximate cause requirement. The statute defines a victim to whom restitution must be paid as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered… ." 18 U.S.C. § 3663A(a)(2); *see also Robers v. United States*, 134 S. Ct. 1854, 1859 (2014); *United States v. Clark*, 787 F.3d 451, 463 (7th Cir. 2015). As already discussed, the district court did not address proximate causation during sentencing.

That error affects Burns's substantial rights. A defendant's substantial rights are affected when he may have been required to pay more in restitution than he owes. *United States v. Allen*, 529 F.3d 390, 397 (7th Cir. 2008); *United States v. Randle*, 324 F.3d 550, 558 (7th Cir. 2003) ("In requiring [the defendant] to pay several thousand dollars in restitution, without a statutory basis for doing so, the error affects [the defendant's] substantial rights."). Under the current restitution order, Burns may have to pay more than he owes because, without a proximate cause analysis, there is no way of knowing if he caused the victims' full loss. Moreover, the fairness, integrity, and public reputation of judicial proceedings are harmed

when the district court acts without statutory authority. *Locke*, 643 F.3d at 248; *Allen*, 529 F.3d at 397; *Randle*, 324 F.3d at 558.

Ordering restitution beyond what Burns may have caused exceeds the statutory authority that Congress has given courts and requires reconsideration.

### c. Forfeiture

The parties dispute whether forfeiture should be calculated under 18 U.S.C. § 981(a)(2)(A) or (B). Under either section, the defendant must forfeit "proceeds"; the difference in the subsections is in how "proceeds" is defined. Put simply, "proceeds" may mean either receipts (in subsection (A)) or profits (in subsection (B)).

We need not decide that issue here because it is irrelevant. Burns does not argue that the district court should have reduced the forfeiture award by his direct costs in providing the financial services (which would be allowed under (B) but not (A)); rather, Burns argues that the district court erred by awarding forfeiture based on the victims' loss and not his gain. Forfeiture is based on the theory that a defendant should not profit from his illegal activity, and thus, forfeiture orders reflect the defendant's gain as opposed to the victims' loss. *United States v. Webber*, 536 F.3d 584, 603 (7th Cir. 2008); *United States v. Genova*, 333 F.3d 750, 761 (7th Cir. 2003). For our purposes then, the only issue is whether the district court ordered forfeiture in the amount that Burns received from his fraud.

It did not. Neither side alleges that Burns actually gained $3.3 million from his fraud. Burns alleges that he did not profit at all from his fraud. According to Burns, he received a salary and a guaranteed bonus under his employment contract. His compensation didn't depend on his performance,

and therefore, he didn't gain from his fraud. Alternatively, Burns argues that, even if he profited from his fraud, he could at most be required to forfeit the money he actually received for his work ($220,000 over 17 months). The government's only argument that Burns should forfeit $3.3 million is "that a court may order a defendant to forfeit proceeds received by others who participated jointly in the crime, provided the actions generating those proceeds were reasonably foreseeable to the defendant." *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012).

At sentencing, the district court only tangentially addressed what Burns profited from his fraud. And the limited discussion reveals that even the district court did not believe that Burns made $3.3 million from his fraud. The district court stated that Burns "induced [the victims] to part with millions of dollars, which went to your company and which you indirectly benefitted, through your salary and through your bonuses -- the generous bonuses you received." (R. 174 at 89–90.)

Further, the government's reliance on *Contorinis* is misguided. In its brief, the government ignored the court's admonition that it was "not aware of, and the government has not cited, any decision standing for the proposition that a defendant may be required to forfeit funds never acquired by him or someone working in concert with him." *Contorinis*, 692 F.3d at 147. In its brief in support of its motion *in limine*, the government stated that "Defendant is not alleged to have knowingly participated in the Ponzi scheme that happened at USA Retirement." (R. 104 at 4.) The government's response to Burns's post-trial motions specified that "Defendant is alleged *by himself* to have told material lies to investors that caused

them to part with their money and invest it with USA Retirement." (R. 125 at 9) (emphasis in original). The government cannot disclaim allegations that Burns acted in concert with USARMS's owners but then seek a forfeiture order based on what USARMS's owners made from the Ponzi scheme.

That error affects Burns's substantial rights because he was ordered to pay more than he gained from his fraud. *See Locke*, 643 F.3d at 248; *Allen*, 529 F.3d at 397; *Randle*, 324 F.3d at 558. The fairness, integrity, and public reputation of judicial proceedings require that we exercise our authority to correct an error that would cause Burns to forfeit over $3 million more than he gained from his fraud.

### III. Conclusion

The jury verdict is supported by sufficient evidence, so we AFFIRM Burns's conviction. The district court erred, however, in using the full amount of the victims' loss to enhance Burns's sentence and ordering restitution without determining that Burns proximately caused that loss. Moreover, the district court also erred by ordering forfeiture in the full amount of the victims' loss without determining that Burns actually gained that full amount from his fraud. Accordingly, because the errors were plain, we must, and hereby do, VACATE Burns's sentence, restitution order, and forfeiture order, and REMAND those matters for resentencing proceedings consistent with this opinion.

HAMILTON, *Circuit Judge*, dissenting in part. I agree that we should affirm Burns' conviction. I would also affirm his sentence. The majority errs by reversing the below-guideline sentence on an issue that Burns simply did not present to the district court—whether he caused the full $3.3 million loss for which he was held accountable at sentencing. That was the total amount lost by the twelve customers whom Burns convinced to invest in the larger Ponzi scheme.

The majority actually errs twice. First, in the district court, Burns waived the issues he pursues for the first time on appeal. He actually agreed that $3.3 million was the correct figure for the loss amount, restitution, and forfeiture. He even said that the $3.3 million restitution order would be "just punishment" for his offense! Dkt. No. 146 at 19-20. Burns also made strategic use of the $3.3 million figure, making it the basis of his principal argument for leniency: he asked for probation instead of incarceration so that he could repay the victims. That's textbook waiver.

Second, even if Burns merely forfeited his objection on the causation issue, there was no plain error. Burns' substantial rights were not affected by the absence of a more explicit finding on causation. The evidence easily supports such a finding. We should not find "plain error" for the mere lack of a finding that the judge was not asked to make, at least when the evidence will support such a finding.

I doubt that this unusual reversal signals a lasting shift in our approach to sentencing appeals. The majority's approach, though, will encourage defendants to search records for new issues to raise on appeal. That is inconsistent with our usual and sound approach to sentencing appeals. "The sentencing in the district court is the main event. The parties prepare and

identify the issues they wish to address." *United States v. Lewis*, 823 F.3d 1075, 1083 (7th Cir. 2016) (finding waiver of issues first raised on appeal).

When available objections are not raised, the parties and the court should not and need not waste time on issues that are not actually disputed. The sentencing process here was thorough. Judge Kocoras addressed—thoughtfully and in detail—the many issues the parties actually raised before him. We do a disservice to district judges by reversing and remanding for supposedly failing to make findings they were not asked to make on issues that were not disputed. I respectfully dissent from the reversal and remand of Burns' sentence.

I.    *Waiver of Objections to Loss Amount, Restitution, and Forfeiture*

The majority concedes that Burns "never articulated the proximate-cause objection that he makes here." Ante at 7. In fact, he not only failed to object to the loss amount, he affirmatively embraced it. Burns and his counsel submitted numerous objections to the presentence report. Yet in both the written objections and at the hearing, they embraced the $3.3 million figure and used it to recommend what would have been a remarkably lenient sentence, 60 months of probation.

A.    *The Presentence Investigation Report and Burns' Objections*

The waiver here was as thorough as one is likely to see. It began with the presentence investigation report and Burns' written objections to it. Written objections are prepared with time to consider all issues and to select which to pursue. See, e.g., *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000)

(finding waiver; there is "stronger case for waiver" when defendant is given "advance notice of the PSR's contents and an opportunity to object before and during the sentencing hearing," yet fails to object).

The presentence investigation report recommended a total loss amount of $3.3 million, the amount lost by the twelve victims who worked with Burns. (¶26) This amount led to an 18-level increase in the offense level. (¶41) The report recommended the same figure for restitution. (¶¶121, 144) Burns' counsel advised the probation office that he did not dispute the loss amount. (¶40)

Burns filed detailed written objections to the presentence investigation report. He objected to the inclusion of victim impact statements in the report. He asked the court to sentence him under a proposed guideline amendment that would adjust the loss ranges for inflation and reduce the adjustment from 18 to 16 levels. He objected to a sentencing adjustment for abuse of a position of trust. Yet he did not challenge the $3.3 million loss amount in any way.

Burns then outlined his sentencing request: 60 months of probation. His principal argument was that probation would enable him to repay his victims the $3.3 million. He made this claim several times in his objections to the presentence report. Dkt. No. 146 at 13, 19–20. His argument reflects a strategic choice to rely on the full loss amount to support his request for probation instead of incarceration. Burns even called the $3.3 million restitution—which he now challenges on appeal—*just punishment* for his crime: "Requiring Mr. Burns to pay back the $3.3 million in restitution, coupled with the life-long hardships that he will experience as a result of being a

convicted felon, are just punishments for his offense." *Id*. at 19-20.[1]

In his objections to the presentence report, Burns also argued for leniency because of his relatively minor role in the larger USARMS scheme. He illustrated this twice by saying the $3.3 million his victims lost was only ten percent of the larger $37 million fraud:

> This scheme, in which Mr. Burns was not a knowing participant, netted approximately $37 million from 130 investors. There are 12 victims that the government attributes to interacting with Mr. Burns, who lost a total of $3.3 million.

---

[1] Here is the full context of Burns' written request for leniency:

John [Burns] also has to face the daunting task of paying more than $3.3 million dollars in restitution to the victims in this case. *If Mr. Burns is incarcerated for any period of time, he will not be able to make any meaningful contribution to that restitution.* Mr. Burns is 55-years-old. Incarcerating him for the 87 months that the probation officer recommends *will bring any restitution payments to a screeching halt.* If he is sentenced to probation, he can begin making restitution payments immediately because he is currently employed. Further, the prospects of him finding a job at age 61 (the approximate age he will be upon release if this Court follows the probation officers' recommendation of an 87-month sentence and Mr. Burns receives the Drug and Alcohol Program) are improbable. Understandably, the bitter victims want to see someone go to jail as retribution for their losses. But perhaps if given the choice, they would rather have Mr. Burns working and making restitution payments to them. *Requiring Mr. Burns to pay back the $3.3 million in restitution, coupled with the lifelong hardships that he will experience as a result of being a convicted felon, are just punishments for his offense.*

Dkt. No. 146 at 19–20 (emphasis added).

> This loss attributable to Mr. Burns is a mere 10 percent of Durmaz and Pribilski's scheme. Mr. Burns was not a necessary or integral part of the scheme because the Partners were doing just fine raising investment funds before they hired him.

Dkt. No. 146. at 18.[2] This was not an objection to the $3.3 million loss amount. Indeed, this ten-percent argument depended on his *accepting* the $3.3 million amount. The defense obviously considered a challenge to the loss amount and chose a different approach.

B. *The Sentencing and Forfeiture Hearing*

Burns waived his appellate objections again at the hearing on sentencing and forfeiture. Three times at the beginning of the hearing, Burns' counsel agreed to the $3.3 million figure. Sent. Tr. 2–3. The judge first asked whether there was any objection to the preliminary order of forfeiture for $3.3 million. Burns' counsel responded: "Well, we agree with the number. The only question is whether or not he is going to be responsible for the entire amount, which, I guess, is a restitution issue, or if it will be apportioned." *Id.* at 2.

Saying his "only question" was about restitution fell far short of an actual objection for any purpose. It also implicitly accepted the $3.3 million figure as the correct forfeiture amount. After the court rejected apportionment, Burns' counsel agreed that $3.3 million "is the total amount of the loss."

---

[2] Burns' counsel made the same claim earlier in the memorandum: "This scheme netted approximately $37 million from a total of 130 investors. The amount attributable to Mr. Burns is $3,383,183, which is less than ten percent of the total scam." Dkt. No. 146 at 15.

*Id.* at 3. The judge then said: "there is a commonality to the forfeiture order, as well as the upcoming consideration of the restitution order. Those numbers are the same and they cover the same conduct." Burns' counsel responded: "We agree that that is the correct number, Judge." *Id*. Burns thus agreed that $3.3 million was the correct figure for all three purposes: loss amount, restitution, and forfeiture.[3]

---

[3] Here is the full exchange at pages 2–3 of the sentencing transcript:

THE COURT: Good morning. Is there any objection to the preliminary order of forfeiture?

MR. LOPEZ [Counsel for Burns]: Judge, I have not had an opportunity really to respond to it. The only issue that we had –

THE COURT: I thought you agreed with their number?

MR. LOPEZ: Well, we agree with the number. The only question is whether or not he is going to be responsible for the entire amount, which, I guess, is a restitution issue, or if it will be apportioned.

THE COURT: I do not think it is apportionment. This is an indictment solely against Mr. Burns. These properties were counts of the indictment. And, so, whether anyone else may be responsible, Mr. Burns would be responsible for the entirety. That is the way I see it. Do you see it that way?

MR. HEDGES [Prosecutor]: Yes, your Honor.

THE COURT: They are not asking for any larger sum, other than what was tried before me.

MR. LOPEZ: Right. That is the total amount of the loss. I understand that.

THE COURT: Here.

MR. LOPEZ: Here. But I guess the restitution is a different issue.

THE COURT: Well, the restitution that is proposed is the same figure.

MR. HEDGES: That is correct, your Honor.

After sorting through the objections the parties actually raised, the judge summed up his guideline findings and gave the parties a further chance to object:

> So, here is what we have. We have the Guidelines and what they produce. It is a Level 29 and a Criminal History Category of I. That is the end result. And in that calculation, everyone is in agreement, I think – "everyone," meaning the two parties here – there were 12 victims and the loss amount for these victims was $3,383,113. I think that amount is not in dispute.

*Id.* at 22. The defense knew how to object. It remained silent when the judge said the amount was "not in dispute."

Later in the hearing, when Burns himself addressed the court, he followed through on the written argument and again relied on the full $3.3 million loss amount to ask for leniency. He claimed that sentencing him to "any type of incarceration will only serve to delay my ability to start repaying restitution." *Id.* at 87. Although the "restitution of $3.3 million is daunting" he would "go to work" and "willingly make repayment to all of these people." *Id.* He argued that allowing him to work while on probation would "serve a much better purpose … than having me sent to some minimum security

---

THE COURT: Yes. So, there is a commonality to the forfeiture order, as well as the upcoming consideration of the restitution order. Those numbers are the same and they cover the same conduct.

MR. LOPEZ: We agree that that is the correct number, Judge.

THE COURT: All right. Then I am going to grant that motion, so we can dispense with that.

camp, where I will be of no use to anyone." *Id.* His counsel had made the same argument. *Id.* at 51.

C. *The Majority's Theory to Avoid Waiver*

To avoid these unusually extensive signs of waiver, the majority relies on two passages in the sentencing transcript: the question about Burns' responsibility for the full restitution amount, and a virtually incoherent variation on the ten-percent argument discussed above. Neither offers a sound basis for excusing Burns' repeated failure to object and his affirmative embrace of the $3.3 million figure.

As quoted above in note 3, at the beginning of the hearing, Burns' lawyer asked whether he would be responsible for the entire restitution amount or if the amount would be apportioned. The question was only about restitution, not forfeiture, and as the dialogue continued, the court concluded that that the amounts for forfeiture and restitution "are the same and cover the same conduct." Burns' lawyer responded: "We agree that that is the correct number, Judge." *Id.* at 3. Missing from this exchange is anything recognizable as an objection. Yet the majority finds that the mere question "necessarily implied that he should have to pay less than $3.3 million," ante at 8, which leads the majority to conclude that Burns did not accept the $3.3 million figure or make strategic use of it.

Lawyers and judges in federal courts understand the difference between questions and objections. A lawyer who does not like an answer to a question can register an objection if there is one. Here there was none. Yet the majority finds that the judge erred by not treating the mere question about possible apportionment as if it were a signal that Burns wanted

to raise every possible objection to the amount used for guideline loss, restitution, and forfeiture.

That is not a sound approach to appellate review. Where counsel and client select issues to pursue at sentencing, as happened here, the selection of issues waives other issues that might well have distracted from the issues presented. See *Staples*, 202 F.3d at 995 (finding waiver of sentencing issues not raised in written objection to presentence report); see also *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005) ("There may be sound strategic reasons why a criminal defendant will elect to pursue one sentencing argument while also choosing to forgo another, and when the defendant selects as a matter of strategy, he also waives those arguments he decided not to present."); see also *United States v. Hible*, 700 F.3d 958, 961 (7th Cir. 2012) (collecting cases).[4]

After concluding that Burns did not accept the $3.3 million restitution and forfeiture, the majority turns to the guideline loss amount, finding that Burns showed he was not accepting the $3.3 million loss amount based on a statement "inartfully

---

[4] We apply the same approach to waiver in the selection of issues on appeal, where we do not insist on extra evidence of strategy. When lawyers select the issues to argue on appeal, we treat as waived issues that might have been raised but were not. See, e.g., *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 565 (7th Cir. 2011) ("[Defendant] acknowledged that he didn't raise vicarious liability below and wasn't raising it on appeal. [Defendant] therefore has waived this argument."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (a "skeletal 'argument' … does not preserve a claim" on appeal); *Sere v. Board of Trustees of Univ. of Illinois*, 852 F.2d 285, 287 (7th Cir. 1988) ("We consistently and evenhandedly have applied the waiver doctrine when appellants have failed to raise an issue in their opening brief.").

articulated" during the sentencing hearing. Ante at 9. To understand the statement, some context is helpful. Twice in Burns' response to the presentence report, he attempted to minimize his role in the larger USARMS scheme by saying that the $3.3 million his victims lost was only ten percent of the larger $37 million fraud. Dkt. No. 146 at 15, 18. His counsel made this claim again in the sentencing hearing: "And when you look at the total loss of all of the victims in general versus the amount that is proportionate to Mr. Burns, it is less than 10 percent of everything. So, Mr. Burns was not an integral part of anything, in our opinion, because this scam was operating successfully long before Mr. Burns came along." Sent. Tr. 43. Again, this was not an objection to the loss amount. It was an effort to illustrate Burns' minor role.

Burns' counsel later offered a confusing variant of the ten-percent argument for the first time. The majority relies on this statement:

> I think, also, the Court could look to the percentage of the whole under this factor, the fact that this whole scheme, you know, netted—I don't know the number off the top of my head, but 30-something million. And he is attributable for about three million. So, that is 10 percent. So, if your Honor takes the Guidelines of the 10 percent amount, the loss amount would be, roughly, yeah, about 300-and-some-thousand. So, that would equate to an Offense Level 7—Base Offense Level 7—plus 12 for the monetary amount.

Sent. Tr. 53–54. In context, this mystifying statement seems to be a confused variant of the ten-percent minor-role argument

Burns had already made several times. The judge had resolved the guideline calculation issues much earlier in the hearing. *Id.* at 22. Even the most charitable interpretation of this confusing statement should not override the extensive record of Burns' agreement with and strategic use of the $3.3 million amount. The waiver was clear.

## II.  *Plain-Error Review*

After overlooking Burns' waiver, the majority errs further by applying the plain-error standard so liberally that it is as if the defendant had presented to the district court the same argument he presents now on appeal. That is not plain-error review.

The late Justice Scalia explained for the Supreme Court the reasons for correct and rigorous application of the standard:

> If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue. If he fails to do so in a timely manner, his claim for relief from the error is forfeited. "No procedural principle is more familiar to this Court than that a … right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944).

> If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is

> good reason for this; "anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal." *United States v. Padilla*, 415 F.3d 211, 224 (C.A.1 2005) (en banc) (Boudin, C.J., concurring).
>
> This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from "'sandbagging'" the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.

*Puckett v. United States*, 556 U.S. 129, 134 (2009) (applying rigorous plain-error review to sentencing issue); accord, e.g., *United States v. Arenal*, 500 F.3d 634, 639 (7th Cir. 2007) (applying rigorous plain-error review to challenge to factual basis for guilty plea; timely objection could have cured arguable error). Those observations apply directly to Burns' new challenge to the loss calculation used in his sentencing.

The majority notes, though, that "we have remanded cases when the district court improperly applied the causation analysis [for loss amount] and when the district court did not address causation at all." Ante at 13, citing *United States v. Whiting*, 471 F.3d 792, 802 (7th Cir. 2006), and *United States v. Domnenko*, 763 F.3d 768, 776–77 (7th Cir. 2014). True enough, but in those cases the defendants had raised the same objections in the district court that they raised on appeal. Neither case was decided on plain-error review.

The majority also points out that the words "reasonable foreseeability" and "proximate cause" do not appear in the sentencing transcript. That's right. Those words do not appear because the defense *did not argue* there was any problem with foreseeability or causation with the $3.3 million loss. Judge Kocoras sensibly focused his energy on the many issues the parties actually argued. (The sentencing transcript is 108 pages.) He did not waste anyone's time on issues that the parties did not argue. See *Lewis*, 823 F.3d at 1081 (judges and others in criminal justice system "do not need to waste time treating matters that are not disputed as if they were").

Even assuming no waiver, so that plain-error review would be available here, Burns has not shown that his substantial rights were affected or that a failure to set aside his sentence would seriously affect the fairness, integrity, or public reputation of the judicial proceedings, let alone a miscarriage of justice. The burden is on Burns to show the court that the claimed error affected the outcome. *United States v. Olano*, 507 U.S. 725, 734–35 (1993). This ordinarily requires a "specific showing of prejudice," *id.*, not just speculation about the possibility of a different outcome.

This is not a case where the guideline calculation was actually wrong, as it was in *Molina-Martinez v. United States*, 578 U.S. —, 136 S. Ct. 1338 (2016) (finding plain error and ordering new sentencing where guideline range was in fact wrong). All that is supposedly missing here is a supporting factual finding on an issue that was not disputed. The majority itself recognizes that the district court may well find on remand that Burns' fraud was a proximate cause of the victims' $3.3 million loss. Ante at 14.

That outcome is both likely and entirely appropriate. It also shows there was no plain error here. Read in its entirety, the sentencing transcript shows that the court believed Burns was a proximate cause of his victims' entire losses. The judge said that Burns' claims that he was unaware of the larger Ponzi scheme were "not true." Sent. Tr. 89. "I do not think you stand before me as an innocent man who was euchred …. You are too sophisticated. You are too sharp a businessman to have fallen for that." *Id.* at 90. And while Burns may not have been the "architect" of the larger scheme, he "must have got suspicious somewhere along the way," and instead of walking away he chose to "become their best salesman." *Id.* at 93. The majority does not address these findings in its plain-error review.

The government did not argue that Burns had actual knowledge of the larger Ponzi scheme, but the judge made clear at the sentencing hearing that the evidence showed that Burns knew the supposed investments in Turkish government bonds were too good to be true. While the judge did not use the phrase "proximately caused," he clearly found that Burns was foreseeably responsible for the losses. At best, Burns deliberately closed his eyes to the warning signs and

then lied to lure prospective investors. Those findings based on circumstantial evidence of Burns' state of mind are more than sufficient to support findings of proximate cause and reasonable foreseeability for the full $3.3 million.

Hindsight and the leisurely pace of appeal show there was a little more room for Burns to have argued that the forfeiture amount, as distinct from the identical guideline loss and restitution amount, should have been the amount he was paid instead of the amount his victims lost. It is easy to understand why Burns and his lawyers chose not to start an idle debate of the issue. The court was already ordering restitution of the same $3.3 million. There was nothing to gain by arguing whether forfeiture should be measured under 18 U.S.C. § 981(a)(2)(A) or (B).

In sum, the record here shows that Burns and his lawyers focused carefully on sentencing issues. They selected the issues they wanted to pursue. They chose not to dilute them by pursuing other potential but unpromising issues, including the proximate cause objection at the heart of the majority's decision. While Burns was disappointed by the results of the strategy, his conduct amounts to waiver. We should not overlook the waiver and indulge Burns' appellate makeover of his strategy and case. Nor was there any plain error. I would affirm the judgment of the district court in all respects.